UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGAL CINEMAS, INC., | No. 2:16-cv-02854-MCE-AC |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| SHOPS AT SUMMERLIN NORTH, LP; ELK GROVE TOWN CENTER, LP; THE HOWARD HUGHES CORP., | |
| Defendants. | |

Through this action, Plaintiff Regal Cinemas, Inc. ("Plaintiff") brings seven causes of action against Defendant Howard Hughes Corporation ("HHC"), a property development company, and two of its developments, Defendants Shops at Summerlin North, LP, and Elk Grove Town Center, LP (collectively, "Defendants"). Specifically, Plaintiff alleges the following: (1) breach of contract regarding the Elk Grove lease, (2) breach of contract regarding the Summerlin lease, (3) breach of implied contract, (4) breach of the covenant of good faith and fair dealing, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.

Plaintiff alleges it entered into a package deal for two leases with HHC—a desirable lease in Elk Grove and a less desirable lease in Nevada—and that it only

1

accepted the latter so that it could obtain the former as part of the package. According to Plaintiff, Defendants allowed the project in Nevada to move forward, but delayed the Elk Grove project. Defendants now claim that performance of the Elk Grove project is impossible due to increased costs, and this suit followed. The case was removed to this Court from Sacramento Superior Court on December 2, 2016. ECF No. 1.

Presently before the Court is Defendants' January 12, 2017, Motion to Disqualify Plaintiff's counsel, Loeb & Loeb LLP ("counsel" or "Loeb"). ECF No. 8. Plaintiff filed its opposition on February 2, 2017, ECF No. 9, and Defendants replied on February 16, 2017, ECF No. 15. The Court has also reviewed Plaintiff's subsequent authority filed March 1, 2017, and Defendants' response thereto. ECF Nos. 17 and 18. For the reasons set forth below, Defendants' motion is DENIED.[1]

## STANDARD

In California, the Rules of Professional Conduct of the State Bar of California[2] prohibit an attorney from accepting or continuing representation where the interests of the new client are adverse to the interests of another client. Rule 3-310 specifically addresses this conflict of interest between clients or between present and former clients. The Eastern District of California has adopted the Rules of Professional Conduct of the State Bar of California as standards of professional conduct in this Court. E.D. Cal. Local Rule 83-180(e).

Should such a conflict surface, this Court's "authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every manner pertaining thereto.'" Metro-Goldwin-

---

[1] Because oral argument would not have been of material assistance in rendering a decision, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] Unless otherwise indicated, all further references to a "Rule" are to the Rules of Professional Conduct of the State Bar of California.

2

Mayer, Inc. v. Tracinda Corp., 36 Cal. App. 4th 1832, 1837-38 (1995) (quoting Cal. Civ. Proc. § 128(a)(5)).  The issue of disqualification "ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility."  Id. (quoting In re Complex Asbestos Litigation, 232 Cal. App. 3d 572, 586 (1991)).

Where a party is seeking to disqualify an opposing attorney "because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship." Koo v. Rubio's Rests., Inc., 109 Cal. App. 4th 719, 729 (2003) (quoting Civil Serv. Comm'n v. Sup. Ct., 163 Cal. App. 3d 70, 76-77 (1984)).  The party seeking disqualification bears the burden of establishing the attorney-client relationship.  Id.

## ANALYSIS

By way of the present motion, Defendants argue that Loeb & Loeb LLP may not represent Plaintiff Regal Cinemas because Loeb terminated HHC as a client for the purpose of retaining Plaintiff as a client.  Specifically, Defendants allege the following timeline:

- On January 16, 2014, Loeb entered into an ongoing attorney-client relationship with HHC.
- Loeb represented HHC in a number of matters, and most recently in a deal that remained ongoing as of the filing of the present lawsuit.
- Loeb provided legal advice to HHC in June 2016 regarding that ongoing matter.
- In July 2016, Allen Hubsch, then an attorney at Hogan Lovells US LLP, sent demand letters to Defendants in connection with this litigation on behalf of Plaintiff.

///

3

- In early October 2016, Loeb informed HHC that it had hired a partner who represented a client that wanted to sue Defendants and, without identifying the client, requested a waiver.
- HHC declined to waive the conflict.
- On October 11, 2016, Loeb announced on its website that Mr. Hubsch had joined the firm.
- On the same day, Loeb sent a disengagement letter to HHC, purporting to terminate its relationship with HHC "effective immediately."
- On October 25, 2016, HHC responded to Loeb's disengagement letter by requesting its files and records.
- On October 28, 2016, Loeb filed this lawsuit against HHC and two of its wholly owned subsidiaries, the Shops at Summerlin and Elk Grove Town Center, with Mr. Hubsch acting as counsel.

Defendants refer to this situation as a "classic hot potato maneuver" whereby Loeb dropped its client (HHC) so that it could take on a new client (Regal) that had a conflict of interest with the former client. As Defendants note, a law firm cannot avoid the rule against concurrent representations by terminating an existing client for the purpose of taking on a representation adverse to that client. Such an arrangement is a violation of the duty of loyalty owed to the existing client. Because Loeb did not obtain the necessary waiver from HHC, the conflict is considered concurrent and disqualification is automatic under Rule 3-310.

Plaintiff essentially contests the first two bullet points above. According to Plaintiff, Loeb has sent a total of two engagement letters to HHC: one in 2014 that never materialized, and one in 2015.[3] The 2015 matter concluded when the transaction agreement that was the subject of that engagement was executed in January 2016. Plaintiff concedes that Loeb provided brief legal advice to HHC on that 2015 matter in

---

[3] In light of the fact that Loeb performed absolutely no work under the 2014 engagement, its significance is not clear. Because Loeb was not on retainer, and because neither party claims the 2014 engagement was ongoing, the Court finds only the 2015 matter to be significant to the present motion.

4

June 2016, but insists that this work—for which it billed the client approximately two hours—was nothing more than brief follow-up on the 2015 matter and does not mean that the engagement was ongoing. In fact, the 2015 engagement letter specifically limited the scope of the parties' engagement and addressed the possibility of representation in future matters, providing that Loeb would perform additional legal services as the parties "may agree upon from time to time." See Frankenheimer Decl. ¶ 3, Ex. 1. Plaintiff calls this a "framework agreement," meaning additional projects would be conceivable only through new agreements.

Plaintiff further claims that Loeb's waiver request was directed to HHC as a former client, and was only sent in an abundance of caution. It also claims that the disengagement letter of October 2016 was sent as a courtesy, and was intended to confirm the already-terminated attorney-client relationship. Because the 2015 matter had concluded, and because the engagement letter was not a standard retainer whereby the attorney-client relationship would have been ongoing, HHC was not a "current client." As a former client, HHC is only entitled to disqualify Loeb under the conflict rules if the subjects of the two matters overlap. The parties agree they do not.

In reply, Defendants argue that the fact that Loeb provided advice to HHC in June 2016—five months after the transaction was completed—evinces an ongoing attorney-client relationship. The fact that the engagement letter was a "framework agreement" for future work is thus irrelevant because the only relevant engagement was the 2015 matter. Defendants argue that Loeb's request for a conflict waiver and subsequent disengagement letter—which letter provides that termination is "effective immediately"—show that the parties understood the matter to be ongoing.

At bottom, the issue of whether Loeb & Loeb must be disqualified as counsel for Regal Cinemas hinges on whether the 2015 matter was concluded or ongoing when Loeb took on Regal as a client in October 2016. Under both the California Rules of Professional Conduct and the parties' engagement letter, Loeb's conduct in taking on Regal Cinemas as a client was proper if and only if the 2015 matter concerning HHC had

concluded before October 2016.  See Cal. R. Prof. Conduct 3-310; Frankenheimer Decl. ¶ 3, Ex. 1.

Loeb's October 2016 disengagement letter, which was sent the same day Loeb announced that it hired Mr. Hubsch—and the language in that letter indicating termination of the attorney-client relationship was "effective immediately"—certainly weighs in favor of disqualification.  But it is not unreasonable to believe that Loeb simply sent the letter in an abundance of caution, likely when someone realized late in the game that the addition of Mr. Heuber to the firm might pose a problem.[4]  Similarly, it is not unreasonable to believe that the "effective immediately" language contained in that letter was included by mistake (perhaps because the firm uses a boilerplate disengagement letter).  The sending of an unnecessary disengagement letter is not enough to create a conflict where one didn't exist without the letter.

The Court therefore must look beyond that single letter.  In so doing, the court finds nothing that otherwise indicates the 2015 matter was ongoing, as Defendants claim.  First, the agreement itself was limited in scope and provided that additional work "may be agreed upon from time to time," evincing the parties' apparent intent to enter into the 2015 agreement solely for the purpose of completing the subject transaction.  See Banning Ranch Conservancy v. Super. Ct., 193 Cal. App. 4th 903, 911-915 (2011).  That transaction was concluded upon execution of the relevant documents in January 2016, and with the exception of just two hours of work in June, Loeb performed no work on the matter after January.

Defendants' argument therefore relies on the fact that Loeb performed two hours of follow-up work in June 2016.  Defendants claim these two hours indicate that the 2015 matter was ongoing and simply dormant from January to June, and again from June to the present.  The Court is not so convinced.  Two hours of work to wind up an engagement after five months of silence is not enough to indicate that a matter is

---

[4] The Court finds Loeb's phone call to HHC and request that it waive the unknown/unnamed conflict were similarly done as a courtesy and in an abundance of caution.

continuing. Nor was it necessary for Loeb to open a new matter even if the 2015 matter had long been concluded, and its failure to do so does not necessarily indicate that the 2015 matter was still open. The follow-up work was just that—follow up. Without more, the Court is not inclined to disqualify counsel and deprive Plaintiff of the counsel of its choice.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Disqualify Counsel, ECF No. 8, is DENIED.[5]

Dated: September 13, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court need not and did not consider the documents submitted with Plaintiff's request for judicial notice, ECF No. 10, that request is DENIED.